UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DOMINICK WONG,<br>Defendant. | Case No. 19-cr-00558-YGR-3 (KAW)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO MODIFY BOND**<br>Re: Dkt. No. 38 |

A federal grand jury indicted Dominick Wong and two others in a three-count indictment alleging a conspiracy to manufacture and distribute controlled substances, manufacture, possession with intent to distribute and distribution of controlled substances, and possession of punches and dies designed to make counterfeit drugs. (See Dkt. No. 11.) Agents arrested Wong on September 20, 2019. A week later, the Court released him on a $50,000 unsecured bond to live with his parents in San Francisco.[1] Both of his parents signed the bond as sureties. (*See* Dkt. No. 8.) Among other things, the bond directed Wong not to change residence without the prior approval of Pretrial Services. Wong's girlfriend recently gave birth to their child. Wong asked Pretrial Services to allow him to leave his parents' house and move in with his girlfriend. Pretrial Services has not given permission because of the Government's objection to a move, although Pretrial does not object to the move. (*See* Dkt. No. 48-1.) On March 2, 2020, Wong moved the Court to modify the conditions of his release to allow him to make that change. (Dkt. No. 38.)

The Court deemed this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 47.) After reviewing the parties' briefs, Wong's March 24, 2020

---

[1] Defendant's address at the time of the hearing was listed on the Pretrial Services report as his parents' address, and it was noted that he stayed at his girlfriend's house on weekends.

objections, and Wong's March 26, 2020 sur-reply, and for the reasons set forth below, the Court denies his motion.

## I. LEGAL STANDARD

In evaluating the conditions under which pretrial release is appropriate, the Court considers (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). In cases like this, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the Defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f).

## II. DISCUSSION

When the Court initially decided to release Wong on bond, it took into account, the factors listed above. The Court found that the combination of conditions listed on the bond form, including that Wong live with his parents and that his parents sign as sureties, were sufficient to reasonably ensure that Wong will appear as directed for court proceedings and to mitigate any danger to the community.

Wong now asks to change residence and live with his girlfriend, instead of his parents. Wong did not proffer his girlfriend as a surety initially, and the Court finds that allowing him to live with her would upset the balance of risks and mitigation factors the Court struck when it issued the bond. First, the Court does not believe that allowing Wong to live with his girlfriend would mitigate the risk of danger to the community in the way that living with his parents does. Wong's parents appear to be law-abiding persons who were neither aware of nor involved in his

alleged criminal conduct.[2] After speaking with them at the original bond hearing, the Court believed that they would be suitable sureties and a positive influence on him. Further, the Court always considers the suitability of the residence to which a defendant is being released. The fact that Wong would be living with his parents who were signing on the bond as sureties were conditions that the Court believed mitigated risk of flight and danger to the community.

Additionally, the release order states that Wong shall not change his residence without prior approval of Pre-Trial Services. (*See* Dkt. No. 8.) Regardless of the reason, Wong did not receive approval or a recommendation from Pre-Trial Services to change his residence to his girlfriend's house. The court also notes, that Pretrial Services might not have considered the information proffered by the government regarding Mr. Wong's girlfriend.

The Court has received uncontroverted information that Wong's girlfriend was at least aware of his alleged criminal conduct while it was happening. For example, the government proffered, without contradiction, that PG&E records indicate that Wong's girlfriend paid at least $9,666.80 towards the utilities in the house where agents discovered two commercial pill presses and a 300-plant indoor marijuana grow. (Dkt. No. 40 at 2.) The government also proffered, again without contradiction, that text messages between Wong and his girlfriend indicate that Wong's girlfriend was aware of his criminal conduct before he was arrested. (*Id.* at 2-3.) The government also proffered, without contradiction, that recorded jail calls indicate that Wong's girlfriend may have helped him to hide evidence of his crime after he was arrested by moving items out of a storage locker and collecting cash he had hidden in various locations in his house. (*Id.* at 3.) While Wong argues that his girlfriend is not a co-defendant, he does not dispute that she had knowledge about his alleged criminal acts. (*See* Dkt. No. 48 at 2.) Thus, it is not clear Wong's girlfriend would have sufficient moral suasion over him, as compared to his parents who have put themselves on the line financially for his release.

Further, Wong has, thus far, been living with his parents without problems. Allowing Wong to move in with his girlfriend while keeping his parents on the bond as sureties increases

---

[2] While Wong observes that he lived with his parents at the time of the alleged acts, he does not dispute that they were unaware of the alleged acts. (Dkt. No. 48 at 1.)

3

the risks of forfeiture to them.

Wong asserts that it would be "cruel and unusual punishment" to deny his request, as this would prevent him from bonding with his new child. Wong, however, cites to no legal authority that this rises to the level of cruel and unusual punishment. In general, "[a] particular punishment violates the Eighth Amendment if it constitutes one of those modes or acts of punishment that had been considered cruel and unusual at the time that the Bill of Rights was adopted." *United States v. Gementera*, 379 F.3d 596, 608 (9th Cir. 2004) (internal quotation omitted). Cruel and unusual punishment usually arises in the context of detention, providing a minimum standard of care for a detainee's rights. *See Wright v. Gutierrez*, No. CV 11-4343-PSG (SH), 2012 U.S. Dist. LEXIS 62477, at *19 (C.D. Cal. Apr. 3, 2012). The Eighth Amendment, however, "addresses pretrial release by providing merely that 'excessive bail shall not be required.'" *United States v. Salerno*, 481 U.S. 739, 752 (1987). "The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Id.* at 754. "[T]o determine whether the Government's response is excessive, [the Court] must compare that response against the interest the Government seeks to protect by means of that response." *Id.*

In *United States v. Gardner*, the district court found that the Eighth Amendment's Bail Clause applied to conditions of pretrial release. 523 F. Supp. 2d 1025, 1029 (N.D. Cal. 2007). Applying *Salerno*, the court considered whether the proposed conditions were "'excessive' in light of the government's valid interest obtaining an additional safeguard against the risk of post-arrest criminal activity." *Id.* Notably, the *Gardner* court acknowledged that the Eighth Amendment does not "require that the conditions imposed on a defendant's release will be the 'least restrictive.' *Salerno* . . . only require[s] that the condition not be excessive in light of the government's interest; that the condition be reasonably calculated to achieve the government's legitimate interest." *Id.* at 1031.

Here, Wong has made no showing that not allowing Wong to move in with his girlfriend would be excessive in light of the government's legitimate interest. First, Wong's release conditions are not punishment. To the contrary, they are the conditions the Court concluded were

4

necessary to secure his appearance and mitigate the danger he posed to the community. Second, his conditions of release do not prevent him from having contact with his girlfriend or their new baby. Wong fails to explain why it is necessary that he live in the same residence as his girlfriend in order to bond with their child. He also asserts that he cannot be a "consistent" part of the child's life unless he and his girlfriend live together. The Court disagrees. His current conditions of release allow him that consistency. Though living in separate residences may not be an ideal arrangement, Wong may have the contact with his baby that he desires. He can make up for missing feedings or diaper changes in the middle of the night by providing extra assistance and care for his baby during the hours he is able to be there.

The Court therefore is not persuaded that failure to modify Wong's conditions of release will interfere with his ability to bond with his new baby or provide assistance to the baby's mother. The modification he seeks would, however, remove him from the positive influence of his parents. This would both remove one of the mitigating factors the Court relied on when it issued the bond and increase the risks to Wong's parents as sureties. Additionally, the status quo still permits Wong to be with his child for a significant part of the day.

### III. CONCLUSION

For all of these reasons, the Court DENIES Wong's motion. The Court, however, sets a status hearing in 90 days, at which time the parties can reassess the bond conditions with input from Pretrial Services, taking all of the information available and Defendant's continued success on release, to determine if a modification would be appropriate. Any future proposed modification will require the agreement and support of the sureties on the bond.

IT IS SO ORDERED.

Dated: April 3, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge